HELEN KITZER, Plaintiff-Appellee, *v.* PHILLIP C. KITZER, JR., *et al.*, Defendants—(PLYMOUTH INSURANCE AGENCY, INC., Defendant-Appellant; EXCHANGE NATIONAL BANK OF CHICAGO, Defendant-Appellee.)

(No. 72-375;

Second District—June 14, 1974.

Blumenfeld & Blumenfeld and Henry N. Novolselsky, both of Chicago, for appellant.

D'Ancona, Pflaum, Wyatt & Riskind and Louis Z. Grant, both of Chicago, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Plymouth Insurance Agency, Inc. (Plymouth), appeals from a judgment entered after remand of the cause in a prior appeal. (1 Ill.App.3d

1016.) The trial court, after a hearing in which additional evidence was taken, again ordered that the proceeds of the sale of certain real estate located in Hinsdale be distributed in part to the Exchange National Bank of Chicago (Exchange) to the extent of its mortgage lien, and the balance be paid to Helen Kitzer, the plaintiff in the divorce action.

On appeal Plymouth contends that the trial court's findings are inconsistent and against the manifest weight of the evidence. Specifically Plymouth takes the position that the note and trust deed were executed to it for the purpose of securing a portion of the purchase price of the Hinsdale property purchased for Phillip Kitzer, Jr., and Helen Kitzer, his wife, and that Exchange held the note and trust deed only for safe-keeping purposes. Exchange contends that the trust deed and bearer note in question in the amount of $27,000 were pledged as collateral to it to secure loans made to Phillip Kitzer, Sr., by Exchange.[1]

The facts and findings from the first hearing are set out in the prior appeal (1 Ill.App.3d 1016), and need not be repeated here.

After hearing additional evidence upon remand the trial court found that Phillip Kitzer, Sr., withdrew $44,500 from Plymouth's bank account either as a loan or an advance to himself and with this money made a valid gift to Phillip Kitzer, Jr., and Helen Kitzer of the Hinsdale property, and that as an accommodation to the senior Kitzer, Phillip Kitzer, Jr., caused the note and trust deed in question to be issued and allowed Phillip Kitzer, Sr., to pledge these documents as collateral to secure the latter's indebtedness to Exchange. The court ordered that the proceeds of the collateral in excess of the senior Kitzer's indebtedness to Exchange be paid to Helen Kitzer.

Plymouth argues first that the judgment below cannot be supported by the findings. It reasons that the finding that a gift was made of the Hinsdale property is inconsistent with the finding that the trust deed and note were valid; and that the finding that Phillip Kitzer, Sr., deposited the trust deed and note with Exchange as collateral to secure his indebtedness is inconsistent with the order that the excess proceeds be paid to another.

■■ The trial court's finding that the Hinsdale property was a gift· to plaintiff and her husband is not inconsistent with its finding that the subsequent note and trust deed were valid as an accommodation to Phillip Kitzer, Sr. Plymouth is apparently concerned that no considera-

---

[1] In the proceedings below Helen Kitzer claimed that the note and trust deed were invalid as a fraud upon her. In this appeal, however, she has adopted the brief and argument of Exchange and we therefore conclude that she has abandoned this claim.

tion was shown for the issuance of the note and trust deed and their subsequent pledge to Exchange. The note secured by the trust deed was executed by a land trust trustee payable only out of the land trust *res* and no personal liability attached to the beneficiary, Phillip Kitzer, Jr., under the provisions of the trust deed and note. Nevertheless, the note still qualified as a negotiable instrument under article 3 of the Uniform Commercial Code. (Ill. Rev. Stat. 1971, ch. 26, par. 3—105(1) (h), and Official Comment 7.) Under the Commercial Code the execution of a note to secure the antecedent or existing indebtedness of another needs no consideration. (Ill. Rev. Stat. 1971, ch. 26, par. 3—408, and Official Comment 2 thereto; *First National Bank v. Achilli* (1973), 14 Ill.App.3d 1, 6.) The note itself is valid without a showing of consideration.

■■■ Although the trust deed does not qualify as a negotiable instrument under the Commercial Code, we conclude that there was a showing that the issuance and pledge of the trust deed securing the note was also valid. The trial court found that both the trust deed and note were pledged as collateral to secure the indebtedness of Phillip Kitzer, Sr., to Exchange as an accommodation by Phillip Kitzer, Jr., who directed the land trustee to execute the note and trust deed. The beneficiary of an accommodation note and a trust deed securing it may transfer this accommodation paper as collateral security for a concurrent or even an antecedent debt and the maker will have no defense based on want of consideration. (*Bittner v. Field* (1933), 354 Ill. 215, 221; *Foreman Trust & Savings Bank v. Cohn* (1930), 342 Ill. 280, 284-288; *Naef v. Potter* (1907), 226 Ill. 628, 630; *Miller v. Larned* (1882), 103 Ill. 562, 570.) Moreover, both the note and trust deed were payable only out of the land trust *res* with no personal liability attaching to the maker under the terms of either document. Presumably they were issued at the same time as a unit and cannot be regarded as separate transactions. Thus we hold that with the type of note and trust deed involved here the value sufficient to support the note without a showing of consideration is sufficient to support the trust deed as well. *McIntire v. Yates* (1882), 104 Ill. 491, 501.

■■■ Plymouth also argues that the court was inconsistent in ordering that the pledged property not be returned to the pledgor after satisfaction of the underlying debt. This argument overlooks the accommodation feature of the collateral. The court found that as an accommodation to the senior Kitzer, Phillip Kitzer, Jr., who held the sole power of direction under the land trust, caused a bearer note and trust deed to be issued by the trustee and allowed Phillip Kitzer, Sr., to pledge the documents

with Exchange as additional collateral to secure the latter's indebtedness to Exchange. Under these circumstances the collateral belongs to the accommodating party, Phillip Kitzer, Jr., and he is entitled to its return to the extent the indebtedness which it secures is otherwise satisfied. Under the terms of the divorce decree Helen Kitzer, as the junior Kitzer's wife, becomes entitled to the excess proceeds from the sale of the collateral after Exchange obtains satisfaction. We find no inconsistency in the court's conclusions.

Plymouth also contends that the court's finding that it had no lien in the proceeds of the collateral is erroneous. The argument is first made that the evidence is insufficient to establish a gift by Phillip Kitzer, Sr., to his son and the plaintiff, Helen Kitzer, of the entire equity of the Hinsdale property. At approximately the same time the Hinsdale property was placed into the land trust naming Phillip Kitzer, Jr., as sole beneficiary, the trust deed and note were executed. The money used to buy the property apparently came from funds in a Plymouth bank account, and apparently the senior Kitzer was in possession of the trust deed and note when these documents were delivered to Exchange. From these circumstances and from the senior Kitzer's testimony, the court could have found that the Hinsdale property was a gift only to the extent of $12,000, *i.e.*, the difference between the note and the purchase price of the property.

■■ Other facts, however, support the court's finding that a gift of the entire property was intended. The purchase price of the property was listed as a gift to Phillip Kitzer, Jr., and to the plaintiff, Helen Kitzer, on a 1965 Federal gift tax return signed by the senior Kitzer. The court was not required to believe the senior Kitzer's testimony that he signed the form in blank and turned it over to his son; and in fact, the court specifically found the testimony of Phillip Kitzer, Sr., to be unbelievable. Although the trust deed provides for monthly payments beginning March 1, 1965, apparently no payments have ever been made. The type of trust deed and note involved, payable solely out of the *res* of the trust, shows a design for accommodation; neither the grantee nor the beneficial owner under the land trust are disclosed. No records of Plymouth were introduced showing a mortgage transaction by it, and the attorney who purportedly prepared the trust deed and note for Plymouth was not called to testify despite our comments in the prior appeal on his absence. Finally, Phillip Kitzer, Sr., himself testified that he had borrowed funds from Plymouth, which was solely owned by him and his sons, for his own use on prior occasions. From these facts the court could have found, as it did, that the Hinsdale property in its entirety was intended as a gift

from the senior Kitzer to his son and the plaintiff, and that the note and trust deed were executed as an accommodation to the father.

■■ The court's finding that the note and trust deed were pledged as collateral to secure the indebtedness of Phillip Kitzer, Sr., to Exchange rather than having been left with Exchange merely for safekeeping, follows logically from the finding that the note and trust deed were accommodation paper. Kitzer's testimony that the note and trust deed were deposited for safekeeping and not as a pledge appears incredible for several reasons: he failed to produce a safekeeping receipt and Exchange's books contain no recordation of a safekeeping entry for the note and trust deed, although both receipt and recordation are standard operating procedures at Exchange; Exchange did have a collateral card showing that the bank held a mortgage on the Hinsdale property as collateral; Exchange held a title insurance policy and an appraisal on the property which the testimony showed were only obtained on property pledged as collateral; and finally, Exchange showed that during March, 1965, when the note and trust deed came into its possession, Phillip Kitzer, Sr., owed Exchange a fluctuating indebtedness in excess of $35,000.

We conclude that the court's findings are neither inconsistent nor against the manifest weight of the evidence. The judgment below is therefore affirmed.

Affirmed.

GUILD and RECHENMACHER, JJ., concur.